KASER, Administrator, Respondent, vs. LUETTGE, Appellant.

*March 5—April 3, 1928.*

*Gifts: Of note and mortgage: Testamentary disposition: Evidence: Sufficiency.*

> One Linda, the deceased wife of plaintiff and the sister of the defendant, possessed as her sole property a note and mortgage of $6,000, representing her interest in the home farm.   While visiting defendant she accepted $1,200, wrote on the face of the note "Paid," and delivered both the note and the mortgage to the defendant, who had possession of them at her death.   In an action to foreclose the mortgage, defended on the ground of payment, it is *held*, in view of the circumstances attending the transaction and evidence that the sister expected to become a mother within a short time and that the parties had in mind some future arrangements relative either to the sister returning to the home farm to live, or, in case of her death, some arrangement with reference to the child, that there was no effective or valid gift either present or *causa mortis*, the transaction at most being testamentary in character.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge.   *Affirmed.*

This action was commenced February 22, 1924, by plaintiff as administrator of his deceased wife to foreclose a mortgage of December 26, 1922.   Defendant counterclaimed to

have the mortgage declared canceled. Trial was had on May 9th, and judgment entered June 21, 1927, decreeing foreclosure and denying defendant's counterclaim. Defendant appeals.

In 1922 the defendant, then about thirty-one years old, with his sister Linda, four years younger, plaintiff's intestate, were living on a farm which they, with two other children, had inherited from their father; these two having by that time purchased the interest of the two older children. The mother, Anna Luettge, who had been divorced from the father, was living with them.

In May, 1922, Linda married *Joseph Kaser,* the plaintiff here, and went to live with him on his farm some six or seven miles away. There were some differences between the two families because of religion and because it was apparently the wish of the plaintiff that Linda should invest what she had of an interest in the old farm in the new home. The brothers-in-law had a fight in July, 1922, in which the defendant was the victor.

On December 26, 1922, while at defendant's house, Linda conveyed by warranty deed her half interest in the farm to the defendant, and he in turn then gave a note to Linda for $6,000 secured by a mortgage on the farm, which is the mortgage in controversy here.

On January 23, 1923, while on a week's visit at the old home, Linda, then having with her the said note and mortgage, was paid, according to the testimony of defendant and his mother and as found by the trial court, $1,200 cash, $800 coming from the mother's savings and $400 from defendant. At that time Linda wrote across the face of the note the words, "Paid January 23d, Linda Kaser," and left the said note and mortgage with defendant, where they remained until produced in court.

About January 30th she returned to plaintiff's farm and on April 6th gave birth to a son, Eugene Louis, who is still living, and she died on April 14th.

Shortly thereafter the plaintiff was appointed administrator of her estate, and on May 23d, and again on November 16th, letters were written by his attorney to defendant asking for information as to said note and mortgage and asserting claim therefor, neither of which was answered. A formal notice was served January 8, 1924, declaring the mortgage due for default and was followed by this action.

The complaint is in the usual form for a foreclosure. The verified answer of February 25, 1924, admits the execution of the mortgage; alleges continuous possession of the note and mortgage by defendant for some time prior to the death of Linda; alleges payment and discharge in full and that there was no indebtedness thereunder in any sum whatsoever, and that on January 23, 1923, he paid money to Linda in full settlement and satisfaction of said mortgage and said indebtedness, and said Linda did thereafter cancel and discharge said indebtedness and the whole thereof and delivered to the defendant the said note and mortgage in acknowledgment of and for a full and complete accord and satisfaction of the indebtedness.

By way of counterclaim it recited as to the transaction of January 23d that for value received and for the money paid the indebtedness was duly canceled and that defendant fully paid and discharged the same. That the note and mortgage were surrendered and canceled in writing, and that Linda agreed to execute a satisfaction of the said mortgage, which, through inadvertence, was not formally satisfied. Judgment was demanded decreeing that said note and mortgage have been fully paid and that the mortgage be satisfied and discharged of record.

Defendant was not a witness at the trial, but on his prior adverse examination he testified that one of the purposes of the transaction whereby Linda gave him the deed and took the mortgage was so that the plaintiff could not get the property, and that in case the plaintiff would not make a home for Linda and she did not presently die she wanted to go

back to the old home. That he was willing to pay and she was willing to take $6,000 for her half interest. He testified that neither he nor she knew what made up the difference between the $1,200 paid and the $6,000 face of the mortgage. He also claims that something was said at the time to the effect that he and his mother should try to get and bring up the child whose birth was then expected.

The material parts of the findings were that $1,200 and no more had been paid upon the note and mortgage and that Linda did not surrender or discharge the indebtedness and made no gift to the defendant of the balance due on the mortgage, and that the same remained in full force and effect except for the $1,200 payment, and directed judgment of foreclosure and a denial of relief to the defendant under his counterclaim.

Subsequent testimony was taken on matters suggested by the trial court as stated in his written decision, viz.: that it appeared that undue influence was exercised by the defendant and his mother in procuring the transaction on January 23d, and that there was a confidential relationship between Linda, the defendant, and his mother in the same connection.

For the appellant there were briefs by *Brown, Pradt & Genrich* of Wausau, and oral argument by *L. A. Pradt, Jr.*

For the respondent there was a brief by *E. P. Gorman* and *Bird, Smith, Okoneski & Puchner,* and oral argument by *C. B. Bird,* all of Wausau.

ESCHWEILER, J. There is no showing in the record that Linda, the deceased wife of plaintiff and sister of defendant, had any other property than that represented by the note and mortgage of $6,000 of December 26, 1922, representing her half interest in the home farm.

Just what was her real purpose in declaring over her signature on January 23, 1923, that such was "paid," is left very indefinite and uncertain by the testimony. It stands

certain, however, from defendant's admissions and his mother's testimony that $1,200 and no more was paid to Linda at the time. That of course disposes, absolutely and adversely, of defendant's plea of payment in full. Defendant on his adverse examination was challenged time and again to give a full and complete statement as to the transactions and at first refused, under advice of counsel, to testify, on the ground that such concerned a transaction with the deceased, but after being so directed, on application to the circuit court, he did answer, but could give nothing definite or certain in that regard.

In spite of and without any offer to amend the verified answer, which unequivocally asserted a payment in full of the $6,000 mortgage by the defendant not only in defense of plaintiff's claim to foreclosure of the mortgage but in asserting in the counterclaim the grounds for the affirmative relief of having the mortgage declared canceled and discharged, it is now urged here, as in the court below, that there was a valid gift to defendant by his sister at the time of the payment of the $1,200 to her on January 23d of the balance due on said mortgage. This position, it is claimed, is substantiated by her indorsing the word "paid" on the note and leaving with him the note and mortgage, together with the sister's expressed intention of subsequently executing and delivering a satisfaction of the mortgage which had been recorded the day after its execution.

It is not only urged that there was a valid gift *causa mortis*, but also that such was free and clear from any trust for the benefit of the now living and then unborn child of Linda.

While the writing on the note that it was paid and the then delivery of the note and mortgage, the sole evidences of the defendant's indebtedness, by her to defendant might, if such stood alone, be quite persuasive for, if not compelling, a conclusion that there was a gift of the balance due on such obligation at that time, nevertheless the surrounding circum-

Kaser v. Luettge, 195 Wis. 452.

stances give ample support for the contrary conclusion reached by the trial court upon his consideration of the entire record. Among these is the fact that there was, under defendant's own testimony, something more to be done by Linda in order to complete the transaction, namely, that she was to subsequently execute and deliver to him a satisfaction of the recorded mortgage. This was never done, nor is there any showing in the record of her having tried so to do between January 23d and her death in April following. Again, defendant remained silent as to his possession of the note and mortgage after several proper demands had been made upon him for information concerning the same or their production, and although he was bound to know of the substantial title and interest that there would be in his nephew, Linda's son, who survived the mother, and all this while he asserted no claim of a gift.

Again, promptly upon the commencement of the foreclosure suit, by his verified pleading, answer, and counterclaim, he directly asserts payment in full and accord and satisfaction, but nowhere asserts that there was made such a substantial gift of almost $5,000 to him, a gift for which no apparent good reason is given, and without any satisfactory explanation for his having asserted by pleading in substance the contrary.

His own testimony, evasive and contradictory as it was, nevertheless fully warrants the conclusion of the trial court that there was no absolute parting by Linda of all control and direction over this balance of the $6,000 obligation, for, as is the import of defendant's testimony, if Linda did not find it satisfactory to continue to live with her husband and she returned to the home farm then other papers were to be made out, and in case of her death consequent upon the expected delivery of a child then some arrangement was to be made with reference to the child, but just what such arrangement was to be is left, by defendant's own testimony, in a very unsatisfactory situation. Again, and of consider-

able importance, is the very unnatural attitude that would be exhibited in Linda so turning over the large balance still due on the obligation and apparently all she had to the brother as against her husband, to whom she shortly returned and with whom she continued to live, and, so far as the record discloses, in apparent harmony until her death, and still more, so as to entirely exclude any provision for the child she was then bearing.

No express findings having been made on the suggested features of probable undue influence exerted by the brother and mother, or of such a confidential relationship as placed a burden of proof on the defendant, we deem it unnecessary to here discuss those features.

We are satisfied, therefore, from this record that there was no effective and valid gift, either present or in contemplation of death, by what was done between Linda and her brother on January 23, 1923. That at most the transaction can be considered as intended by her to be testamentary only, and which purpose, of course, was ineffectual for want of proper execution.

*By the Court.*—Judgment affirmed.